Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Jones,<br><br>          Plaintiff,<br><br>v.<br><br>Board of Trustees of the I.B.E.W. Local 769-Management Pension Plan; The International Brotherhood of Electrical Workers IBEW Local 769 – Management Pension Plan; Mark Cunningham, Trustee of the I.B.E.W. Local 769- Management Pension Plan; Bob Carrillo, Trustee of the I.B.E.W. Local 769- Management Pension Plan; Eric Lauriha, Trustee of the I.B.E.W. Local 769- Management Pension Plan; Scott Olsen, Trustee of the I.B.E.W. Local 769- Management Pension Plan,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Daniel Jones, by and through undersigned counsel, hereby brings this action under the Employee Retirement Income Security Act, as amended, ("ERISA") 29 U.S.C. § 1001 *et. seq*. to recover pension benefits under the terms of a pension plan and for declaratory, injunctive and other equitable relief to redress violations of ERISA and the terms of the pension plan.

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this action pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §§1132(e), and 28 U.S.C. § 1331.

2.     Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, and the breaches took place in the District of Arizona and the pension plan is administered in the District of Arizona.

**PARTIES**

3.     Plaintiff Daniel Jones was and is an electrical lineman who was employed from in or around October 1984 through in or around September 1993 by various employers under collective bargaining agreements and/or area trade agreements between those employers and the International Brotherhood of Electrical Workers Local 769 ("IBEW") pursuant to which employers contributed to the International Brotherhood of Electrical Workers IBEW Local 769 – Management Pension Plan ("Plan").

4.     Mr. Jones is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

5.     Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants working as electricians and their beneficiaries.

6.     Defendant Board of Trustees of the International Brotherhood of Electrical Workers IBEW Local 769 – Management Pension Plan ("Board") is the Administrator of

2

the Plan and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

7. Defendant Mark Cunningham at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

8. Defendant Bob Carrillo at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A)

9. Defendant Eric Lauriha at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

10. Defendant Scott Olsen at relevant times is or was a Trustee of the Plan and an administrator of the Plan and fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

**GENERAL ALLEGATIONS**

11. From in or around October 1984 through in or around September 9, 1993, Mr. Jones worked as an electrical lineman and foreman for various employers that had collective bargaining agreements pursuant to which employers were required to contribute to the Plan.

12. Between the years 1984 through 1993, Mr. Jones earned eight years of vesting credit and 28.6 years of credited service under the Plan.

13. Following the termination of his work for employers under the Plan in or around September 1993, Mr. Jones continued to work in the same skilled trade as an electrical lineman and foreman for another company that did not contribute to the Plan.

14. In 1993, when Mr. Jones left covered employment under the Plan, the Plan provided that a participant was required to have ten years of vesting credit in order to be vested in the participant's accrued benefits under the Plan.

15. In 1993, when Mr. Jones left covered employment, the Plan provided that a participant could incur a break in service and forfeit their accrued benefits under the Plan if they ceased to accrue benefits prior to attaining ten years of vesting service and had a series of consecutive one-year breaks in service that equaled or exceeded the number of years of vesting service the participant had accrued under the Plan.

16. In 1993, when Mr. Jones left covered employment under the Plan, he understood that in order to protect his accrued benefits so that they would become vested he needed to return to work for a contributing employer under the Plan within eight years, by in or around 2001, in order to earn enough credits for all of his benefits to become fully vested.

17. In or around 1999, Mr. Jones was considering whether and when he should quit his then current employment and return to work for a contributing employer under the Plan so that he could earn the credit he needed to become vested.

18. Accordingly, Mr. Jones contacted Defendants in or around 1999 to find out the date by which he needed to return to work in order to earn the additional credit he

needed for vesting purposes and Mr. Jones spoke with and asked several questions of Kay Sobieski, the person then employed as the day-to-day Plan administrator.

19. At relevant times, and up through January 1, 2019, Ms. Sobieski was the person designated by the Trustees to be responsible for the day-to-day administration of the Plan including communicating with participants.

20. During his communications with the Plan in or about 1999, Ms. Sobieski advised Mr. Jones that he was mistaken about his understanding that he needed ten years of vesting service and that the law and the Plan had changed, and he needed only five years of vesting service to be fully vested.

21. During his communications with the Plan in or about 1999, Ms. Sobieski advised Mr. Jones that he was then fully vested because he had previously earned five years of vesting service.

22. Thereafter and over the course of the next two decades, Defendants repeatedly and consistently advised and confirmed to Mr. Jones that the advice he had been given by Ms. Sobieski was correct and that Mr. Jones was 100% vested in the benefits he had accrued under the terms of the Plan.

23. On or about September 26, 2000, Defendants sent Mr. Jones a written statement that indicated the purpose of the statement was "to advise you that you have deferred vested benefits in the plan." The vested benefit statement showed, *inter alia*, that Mr. Jones had a vested monthly benefit in the amount of $572 per month.

5

24. In reliance on the Plan's oral and written representations to him that he was fully vested under the Plan, Mr. Jones determined not to return to work for a contributing employer and did not earn any additional vesting credits under the Plan.

25. Mr. Jones was fully capable and prepared to return to covered employment in order to secure his benefits through earning additional vesting credit if that had been required.

26. But for the Defendants' advice to Mr. Jones that he was fully vested under the terms of the Plan, Mr. Jones would have returned to work in order to avoid the loss of his pension benefits.

27. Defendants repeatedly sent Mr. Jones annual statements, each of which provided: "You are 100% vested in your retirement benefit when you have a least 5 years of Vesting Service."  The annual statements expressly informed Mr. Jones that his current vesting was "100%" and that he was entitled to a monthly benefit of $572 per month at his Normal Retirement Date.

28. Upon information and belief, since in or around 1999 or 2000, Defendants have systematically advised other Plan participants that they are fully vested if they have at least five years of vesting service, regardless of when those years of vesting service were earned.

29. Mr. Jones relied on Defendants' oral and written assurances that he was fully vested in making decisions, including the decision not to return to covered employment prior to 2001 in order to earn credit to become fully vested and in making other employment decisions, planning for retirement, saving for retirement and other financial decisions.

30. The Plan as amended and restated January 1, 2014, which is the Plan in effect before Mr. Jones' Normal Retirement Age, provides that a participant is fully vested in his benefits following five years of Vesting Service and does not limit or qualify the right to five-year vesting based on when vesting credit under the Plan is earned. To the contrary, the Plan provides that effective July 1,1999, if a Participant is credited with five years of Vesting Service, the Participant will be 100% vested after on and after July 1, 1999 as follows:

> 6.1.A Date Full Vesting Occurs
> A Participant's vested interest in his Accrued Benefit will be 0% before the earliest of the following dates and will be 100% on and after such date:
> ….
> (3) Prior to July 1, 1999, if Employed by an Employer and covered by a Collective Bargaining Agreement, the date the Participant is credited with 10 Years of Vesting Service, effective July 1, 1999, if the Participant is credited with five Years of Vesting Service;…

31. Mr. Jones is fully vested under the terms of the Plan.

32. Mr. Jones has eight years of Vesting Service, which is three years more than the Plan requires to obtain a 100% Vested Benefit.

33. Defendants' representations to Mr. Jones and other participants that they were fully vested after five years of service were based on a reasonable interpretation of the Plan.

34. The Plan's Normal Retirement Date is age 65.

35. In or around January 2020, Mr. Jones called to request an application to retire so he could begin receiving his benefits when he turned 65 in January 2020.

36. In response to Mr. Jones' request and in spite of the numerous communications he had received confirming he was 100% vested, by letter dated January 8, 2020, which Plaintiff received on or about January 13, 2020, Defendants stated that because Mr. Jones only had eight years of vesting service, he was not vested and not entitled to his vested accrued benefits.

37. Defendants' January 8, 2020 letter did not include any description of the Plan's review procedures, time limits applicable to such procedures, nor a statement of Mr. Jones' right to bring a civil action under ERISA § 502(a) following an adverse benefit determination on review.

38. The letter dated January 8, 2020 did not contain a statement that Mr. Jones was entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to his claim for benefits.

39. Mr. Jones made a subsequent request for his pension benefits in writing by letter dated January 29, 2020.

40. Mr. Jones timely appealed the denial of his pension benefits by letter dated and delivered to Defendants on March 13, 2020.

41. Defendants acknowledged receipt of Mr. Jones' appeal on March 13, 2020 and again on March 16, 2020.

42. Defendants' March 16, 2020 letter advised Mr. Jones that his appeal would be heard at the next quarterly meeting of Defendant Board of Trustee, which upon information and belief was on or around April 15, 2020.

43. Upon information and belief, the next quarterly meeting after the April 15, 2020 meeting was on or around June 11, 2020.

44. Having received no response to his appeal, by letter dated July 31, 2020, Mr. Jones supplemented his appeal with a letter from his attorneys that enclosed an authorization to act on Mr. Jones' behalf.

45. Defendants failed to respond to Mr. Jones' appeal for over six months after his appeal was submitted.

46. By letter dated September 28, 2020, Defendants denied Mr. Jones' appeal without copying his attorneys or mentioning his supplemental appeal.

47. The letter dated September 28, 2020 did not contain a statement that Mr. Jones was entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to his denial of his claim for benefits and denial of his appeal.

48. Mr. Jones fully exhausted any required administrative remedies.

49. The Plan Administrator is the Board of Trustees composed of equal numbers of individuals who are appointed by employers who are required to make contributions to the Plan and individuals who are appointed by the IBEW.

50. The IBEW representatives on the Board of Trustees must answer to the active employees who elect them and for whom they bargain with employers and have a conflict of interest with respect to the interests of retired Plan participants.

51. The IBEW representatives on the Board of Trustees represent the interests of active employees during the collective bargaining process; they do not represent retirees in the collective bargaining process.

52. Many of the IBEW Trustees are elected union officials and others appointed by the IBEW Trustees. Active employees elect the union officials.

53. Retired IBEW employees have no vote in local union elections and do not get to elect any of the Trustees that serve on the Board of Trustees.

54. Employer Trustees have a conflict of interest with respect to Plan participants and retired Plan participants.

55. Employer Trustees have a financial interest in the Plan because they and the contributing employers that they represent are required to contribute the money used to fund the benefits under Plan and because they may be liable under ERISA's withdrawal liability provisions if they withdraw from the Plan and the Plan is underfunded.

56. This type of Plan, that purports to represent retirees but provides no retiree representation on its Board of Trustees, has a structural conflict of interest.

**COUNT I**
**(TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN)**

57. Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

58. By the acts and omissions set forth herein, Defendants violated the terms of the Plan.

59. Section 502 (a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:

10

> A civil action may be brought -
>
> > (1) by a participant or beneficiary -.. .
> > (2) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

60. As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff has been harmed and denied benefits due under the terms of the Plan and his rights to benefits have been thwarted.

61. As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff is entitled to an order declaring that Plaintiff is fully vested and entitled to benefits under the terms of the Plan and that by denying benefits Defendants violated the terms of the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiff all benefits due and to become due together with prejudgment interest, attorneys' fees and costs.

**COUNT II**
**(TO REDRESS VIOLATIONS OF ERISA'S FIDUCIARY REQUIREMENTS AND FOR EQUITABLE RELIEF PURSUANT TO ERISA § 502(A)(3))**

62. Plaintiff repeats and realleges each allegation set forth in prior paragraphs as though fully set forth herein.

63. Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1) provides in relevant part:

> (1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
>  (A) for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; and

11

      (ii)  defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

***

(D)   in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

64. Defendants have a fiduciary responsibility to provide Plaintiff with truthful and accurate disclosures of the Plan's vesting requirements and to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

65. As set forth herein, even if the Plan could be interpreted in a manner that deprived Plaintiff of Vesting Credit, Plaintiff would nevertheless be entitled to vested benefits and other equitable relief under ERISA.

66. As set forth herein, even if the Plan could be interpreted in a manner that deprived Plaintiff of Vesting Credit, then, in that event, Defendants made repeated false and materially misleading oral and written representations to Plaintiff that that he was fully vested under the Plan based on Defendants' interpretations of ambiguous Plan provisions governing vesting.

67. Plaintiff reasonably relied to his detriment on Defendants' representations that his benefits were fully vested.

68. Under the Plan and law in effect in 1999, mandatory five-year vesting was required for anyone who worked one hour in covered service following the applicable five year vesting effective date.

69. Mr. Jones could have, and would have returned to work, to earn any required additional vesting credit if he had not been told he was fully vested and did not need any additional vesting credit.

70. Defendants conduct including their consistent and repeated concerning Plaintiff's vested benefits coupled with, *inter alia*, the loss of monthly pension benefits for life constitute exceptional circumstances sufficient to estop Defendants from denying Plaintiff the right to his accrued benefits under the Plan.

71. By the acts and omissions complained of above, including, *inter alia*, by failing to adequately provide notice of Plan provisions, by repeatedly providing false and misleading information to Plaintiff, by failing to comply with ERISA and claims procedures requirements and by failing to provide a full and fair review of the claims denial, Defendants deprived Plaintiffs of rights protected by ERISA and the terms of the Plan and breached their fiduciary duties to Plaintiff and are estopped to deny Plaintiff's rights to benefits.

72. As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed and, *inter alia*, has been deprived of rights protected by the terms of the Plan and ERISA and Defendants have been unjustly enriched.

73. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

74. Plaintiff is entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; declaring that Defendants are estopped to deny Plaintiff's rights to retirement benefits; enjoining Defendants from purporting to deny Plaintiff's right to retirement benefits; surcharging the fiduciaries; reforming the Plan, *inter alia*, to remedy the Plan's repeated false and materially misleading misinformation and clarify the Plan's vesting requirements for participants who worked prior to 1999; enjoining Defendants to immediately make Plaintiff whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT III
### (TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)

75. Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

76. Section 503 of ERISA, 29 U.S.C. §1133, provides in relevant part:

> In accordance with regulations of the Secretary, every employee benefit plan shall--
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

77. ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*: must provide timely benefit determinations including in the case of a multiemployer plan administrator that holds regular quarterly meetings no later than the date of the meeting immediately following the plan's request for review unless the request is filed within 30 days preceding such meeting in which case it must be heard at the following quarterly meeting; must provide adequate descriptions of procedures to review claims denials; must advise participants that they may bring suit under ERISA §502(a) following final denial of their claims for benefits; must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, and must notify participants of their right to receive plan documents and information relevant to their appeals.

78. By the acts and omissions set forth above, including, *inter alia,* by failing to provide a timely benefit determination on review; by failing to advise Mr. Jones with adequate descriptions of procedures to review claims denials; by failing to advise Mr. Jones that he may bring suit under ERISA § 502(a) following a final denial of his benefits; by failing to maintain administrative procedures and safeguards designed to ensure that benefit failing to have a claims procedure that ensures that determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants; and by failing to notify Mr. Jones of his right

to receive plan documents and information relevant to his appeal, Defendants violated ERISA's and the Plan's claims procedure requirements.

79. As a result of Defendants' acts and omissions set forth above, Plaintiff has been harmed and his rights to benefits and to pursue his claims were chilled, delayed and thwarted.

80. Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief, including an order precluding any judicial deference from applying to the review of Plaintiff's claim and appeal, enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, requiring Defendants to provide appropriate make-whole relief, and ordering Defendants to disgorge and remedy their unjust enrichment.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A. Declaring that Defendants violated the terms of the Plan;

B. Declaring that Defendants violated ERISA §§ 404, 503, and regulations thereunder;

C. Enjoining Defendants from violating the terms of the Plan;

D. Enjoining Defendants from violating ERISA §§ 404 and 503 and regulations thereunder;

E. Ordering that Defendants are estopped to deny Plaintiff's benefits;

F. Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff together with all profits attributable thereto;

G.  Surcharging Defendants for the full amount of Plaintiff's denied retirement benefits and such other amounts to make Plaintiff whole;

H.  Enjoining Defendants to recalculate Plaintiff's retirement benefits and restore the benefits that were wrongfully denied and make Plaintiff whole for all losses retroactive to his normal retirement date;

I.  Enjoining Defendants to provide a reasonable claims procedure;

J.  Awarding Plaintiff his attorneys' fees and costs pursuant to ERISA § 502(g), and

K.  Awarding Plaintiff such other and further relief as the Court deems proper and just.

**DATED** this 1st day of February 2021.

**MARTIN & BONNETT, P.L.L.C.**
By: s/ Susan Martin
Susan Martin
Jennifer Kroll
4647 N. 32nd St., Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900

*Attorneys for Plaintiff*